**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

CHOPTANK ELECTRIC COOPERATIVE,
INC. and DELAWARE ELECTRIC
COOPERATIVE, INC.

    Plaintiffs,

v.                            Civil Action No. 3:05CV137

NORTHERN VIRGINIA ELECTRIC
COOPERATIVE, a Virginia Electric
Utility Cooperative,

    Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion To Dismiss Plaintiff's Complaint, Or, In The Alternative, To Stay This Action Pending Resolution Of The Pending Proceedings Before The Federal Energy Regulatory Commission (Docket No. 3).

In this breach of contract action, the plaintiffs, Choptank Electrical Cooperative ("Choptank") and Delaware Electrical Cooperative ("Delaware"), allege that the defendant, Northern Virginia Electric Cooperative ("NOVEC"), breached the terms of a electric distribution reorganization agreement (the "Reorganization Agreement") by failing to cooperate with the other members in obtaining approval from the Federal Energy Regulatory Commission ("the FERC"). Because, before this action was filed, the FERC undertook its review of the Reorganization Agreement, from which the breach of contract claim arises, NOVEC asks this Court to

dismiss, or, in the alternative, to stay this action pending the outcome of the FERC proceedings.  NOVEC also contends that this action should be dismissed because: (1) the plaintiffs have failed to join necessary and indispensable parties; (2) the amount in controversy does not exceed $75,000; and (3) the plaintiffs have failed to satisfy a condition precedent to their right to file suit.

## BACKGROUND

Choptank, Delaware, and NOVEC are three of twelve members of the Old Dominion Electric Cooperative ("ODEC"), a not-for-profit electric generation and transmission cooperative.  ODEC is owned by the twelve member cooperatives, which are its only customers. Among other services, ODEC provides electric generation and transmission to its member cooperatives.  In 1983, each of the member cooperatives entered into 45-year "all requirements" wholesale power contracts ("WPC"), whereby each member cooperative agreed to purchase all of the power that it needs to service its customers from ODEC.  The WPCs were amended in 1993.

Beginning in late 2003, ODEC's member cooperatives began the process of reorganizing ODEC into a new entity known as New Dominion Energy Cooperative ("NewDEC").  Under the Reorganization Agreement, the existing WPCs between ODEC and each of the twelve member cooperatives would be assigned to NewDEC, and the ODEC board would be supplanted by the NewDEC board, which would be comprised

2

of two members from each member cooperative.  Although the boards
for eleven of the twelve ODEC member cooperatives ratified the
Reorganization Agreement, NOVEC's board members dissented.  NOVEC,
which is by far the largest of the member cooperatives, took the
position that, as part of the reorganization process, the WPCs
should be renegotiated to remove the provision that the WPCs are
"full requirements" contracts.  The removal of this provision would
enable any of the member cooperatives to acquire additional power
and energy from sources other than ODEC.  After much discussion on
this issue, ODEC's board members, including NOVEC's
representatives, agreed to undertake renegotiations of the WPCs,
per NOVEC's demands, after the Reorganization Agreement was
completed.

In July, 2004, all twelve member cooperatives signed the
Reorganization Agreement.  In so doing, each member cooperative
agreed to "cooperate with [ODEC] [New Dec] as necessary to obtain
required approvals for the Reorganization and to otherwise
consummate the transactions contemplated" in the Reorganization
Agreement.  Pl.'s Ex. D., § 3.7.  In addition, each of the member
cooperatives agreed, inter alia:

> (1) to use reasonable commercial efforts to
> obtain all consents, authorizations, waivers,
> orders and approvals as promptly as
> practicable from any Governmental Entity and
> to make all related filings and registrations,
> which may be necessary; (2) to cooperate fully
> with the other Parties in assisting them to
> obtain such consents, authorizations, waivers,

3

orders and approvals; (3) to remove any injunctions or other impediments or delays, legal or otherwise, in order to consummate and make effective the transactions and actions contemplated by the reorganization agreement.

Pl.'s Ex. D., §§ 5.2 and 5.4.

Pursuant to the Reorganization Agreement, ODEC and NewDEC filed the requisite applications with the FERC seeking its approval of the Reorganization Agreement in October and December, 2004.[1] On January 14, 2005, NOVEC filed a Motion to Intervene, Protest and Answer in Support of Motion to Consolidate with the FERC in response to ODEC's FERC approval filings . According to NOVEC, it filed this protest because ODEC had failed in its filings to apprise the FERC of information about the reorganization that was material to the FERC's approval of the Reorganization Agreement. Specifically, NOVEC alleged in its answer as follows:

Applicants' submittals in the captioned dockets are neither adequately supported nor completely developed, and thus are not ripe for Commission approval in their present form. . . . Applicants' as-filed proposal fails, among other things, to include appropriate amendments to the Wholesale Power Contracts (the "WPCs") between [ODEC] and the Member Cooperatives, including NOVEC, that are to be assigned to [New DEC]. Applicants' failure to address and modify the WPCs: (1) render the Application misleading by virtue of the failure to disclose, much less meaningfully address to conclusion, the negotiations between [ODEC] and NOVEC to restructure NOVEC's (and perhaps all Member Cooperatives') WPC, to which the [ODEC] has just reaffirmed its commitment; (2) render the Applicants' representations that the proposed restructur-

_____

[1] Because ODEC is a public utility, it falls under the FERC's jurisdiction and cannot reorganize without FERC approval.

> ing will not adversely affect the Member
> Cooperatives' interests under those contracts
> substantially incorrect inasmuch as the
> submittal in its present form would actually
> effect material changes to certain provisions
> of those contracts; and (3) render the subject
> rate formulas and requested financing
> authorizations obsolete inasmuch as they are
> premised on the existing WPC's which are now
> to be revised, as NOVEC has been urging and as
> the [ODEC] board has "reaffirmed."

NOVEC's Mot. To Intervene, Pl.'s Ex. A-5, at 2-3.   In addition,

NOVEC asserted that ODEC and NewDEC failed to apprise the FERC that

ODEC had failed to meet the condition precedent to the

Reorganization Agreement that ODEC's Standard and Poor's credit

rating would remain no lower than "A+".

In their answer to NOVEC's protest filing, ODEC and NewDEC

asserted, among other things, that NOVEC had breached the terms of

the Reorganization Agreement by merely filing a protest at the

FERC.   ODEC and NewDEC argued as follows:

> First, NOVEC executed that Agreement,
> acknowledged adequate access to information
> about the transaction and approved the
> reorganization and all transactions related
> thereto.   Second, that Agreement clearly
> obligates NOVEC to participate in and support
> proposed reorganization of Old Dominion and to
> cooperate in all efforts to obtain such
> consents, authorizations, waivers, orders and
> approvals as are required or desirable for the
> reorganization and to consummate the
> contemplated transactions. Third, while NOVEC
> has attempted to suggest that certain
> conditions to the Reorganization Agreement
> have not been met, it has failed to establish
> that the Agreement is not valid and
> enforceable, and specific performance is an
> available remedy.

5

Pl.'s Ex. A-6, at 21-22.   Contrary to NOVEC's claims that the
member cooperatives had agreed formally to renegotiate the WPCs
after the Reorganization Agreement was ratified, ODEC and NewDEC
asserted that no such agreement had ever been reached.   See Pl.'s
Ex. F, at 9.   Instead, ODEC and NewDEC claimed that nothing in the
existing WPCs required modification or renegotiation and,
therefore, that the WPCs would not be amended after reorganization.
See id.   Finally, ODEC argued that the FERC's consideration of
NOVEC's protest action would necessarily involve a "review and
interpretation of the Reorganization Agreement."   Id.   ODEC and
NewDEC contended that "to the extent the Commission [was] willing
to consider the claims and allegations made by NOVEC . . . the
Commission must also be prepared to consider, evaluate and rule on
the terms of the non-jurisdictional Reorganization Agreement."   Id.

On March 8, 2005, the FERC issued two orders with respect to
the Reorganization Agreement approval process and the related
protest filing.   See Pl.'s Exs. E & F.   In the first order, which
addressed the proposed assignment of WPCs from ODEC to NewDEC, the
FERC granted NOVEC's request for a hearing to determine whether
this aspect of the reorganization would adversely affect rates.
See Pl.'s Ex. E, at 9.   In so doing, the FERC made it clear that it
would need to consider the substance of "the transaction proposed
in the application" - i.e., the Reorganization Agreement itself.
Id.   In the second order, which addressed, inter alia, the proposed

6

modifications - for use by NewDEC - of the rate schedules and formula rates for ODEC and approval of a new tariff for ODEC's sale of electricity to NewDEC, the FERC scheduled a trial-type evidentiary hearing to resolve these issues. Pl.'s Ex. F. The FERC held that such a hearing was warranted given that ODEC's and NewDEC's "filings have not been shown to be just and reasonable, and may be unjust, unreasonable, unduly discriminatory or preferential or otherwise unlawful." Id. at 10. As of the present date, these hearings have not been held, although the FERC scheduled a pre-hearing settlement conference for June 14, 2005.

Shortly after NOVEC filed its protest action with the FERC in January, 2005, Choptank and Delaware initiated the instant action. In these proceedings, the plaintiffs ask the Court to enter a decree requiring NOVEC "to specifically perform its obligations under the Reorganization Agreement to remove all impediments and delays, legal or otherwise, in order to consummate and make effective the transactions and actions contemplated under the Reorganization Agreement, including withdrawal with prejudice of NOVEC's Protest pending before the FERC." Pl.'s Compl., ¶ 34. Further, the plaintiff's pray that the Court enjoin NOVEC "to cease further prosecution of its Protest pending before the FERC and to promptly file the necessary pleadings and set the necessary hearings . . . to withdraw the Protest." Id.

NOVEC contends that, in seeking a declaration in this Court that NOVEC does not have the right to file a protest at the FERC, the plaintiffs are asking this Court to usurp the authority of the FERC, which already has recognized NOVEC's right to intervene in the FERC proceedings.  NOVEC also contends that such a ruling will countermand the FERC's earlier ruling - namely, that NOVEC has the right to intervene as part of the Reorganization Agreement approval process - because:

> The issues that the Plaintiffs seek to have this Court adjudicate, and the right of NOVEC to raise issues regarding ODEC's petition for approval of the Reorganization Agreement before the FERC, are issues squarely within the FERC's jurisdiction or directly relate to issues that are squarely within the FERC's jurisdiction.[2]

Although NOVEC concedes that this Court has concurrent jurisdiction with the FERC over the breach of contract issues implicated by NOVEC's protest filing with the FERC, NOVEC importunes the Court to stay the breach of contract action until the FERC proceedings have been completed.  In support thereof, NOVEC contends the FERC will address, and might even render moot, many issues that the Court is asked to consider here.  Further, NOVEC argues that a postponement of this action is in the interest of judicial economy.

---

[2] Defendant's Memorandum In Support Of Its Motion To Dismiss Plaintiff's Complaint, Or, In The Alternative, To Stay This Action Pending Resolution Of The Pending Proceedings Before The Federal Energy Regulatory Commission at 18 (Def.'s Mem. In Support at __").

Choptank and Delaware contend that this is a breach of contract action - pure and simple - over which the FERC has no jurisdiction.  And, NOVEC has gone on record that the FERC has no jurisdiction to consider the breach of contract alleged by Choptank and Delaware.[3]  Thus, Choptank and Delaware contend that the doctrine of primary jurisdiction, under which NOVEC seeks a stay or dismissal of this action, is simply inapplicable here.

### DISCUSSION

The doctrine of primary jurisdiction applies to claims that are properly cognizable in a federal district court but which contain some issue within the specialized competence of an administrative agency.  Reiter v. Cooper, 507 U.S. 258, 268 (1993).  The application of this doctrine enables the district court to refer the matter to the appropriate federal administrative agency, while staying further proceedings in the district court so as to give the parties an opportunity to seek an administrative ruling.  Id.  "Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion whether to retain jurisdiction or, if the parties would be unfairly disadvantaged, to dismiss the case without prejudice."  Id. at 268-69.

---

[3]Plaintiffs' Memorandum In Opposition To Defendant's Memorandum In Support Of Its Motion To Dismiss Plaintiff's Complaint, Or, In The Alternative, To Stay This Action Pending Resolution Of The Pending Proceedings Before The Federal Energy Regulatory Commission at 23 ("Pl.'s Mem. In Opp. at __").

There is no fixed formula for determining when primary jurisdiction should be applied. United States v. Western P. R.R. Co., 352 U.S. 59, 65 (1956). "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Id. A district court should consider the need for uniformity and consistency between administrative and judicial bodies with respect to the regulation of a particular industry. See Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426 (1952). Further, the court should appreciate the advantages of deferring to an administrative agency, at least initially, "particularly when the issue involves technical questions of fact uniquely within the expertise of an agency - such as matters turning on an assessment of industry conditions." Nader v. Allegheny Airlines, 426 U.S. 290, 304 (1976). Indeed, in Nader, the Supreme Court recognized that, even in cases where the administrative agency does not have the authority to confer immunity from common law liability, "it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure 'uniformity and consistency in the regulation of business entrusted to a particular agency.'" Id. (quoting United States v. Western P. R.R. Co., 352 U.S. at 66-67).

In CF Indus., Inc. v. Transcon. Gas Pipe Line Corp., 614 F.2d 33 (4th Cir. 1980), our Court of Appeals invoked the doctrine of

primary jurisdiction to stay the resolution of certain issues on appeal, pending the completion of proceedings in the FERC. The plaintiff in that case, a fertilizer manufacturer, sued the defendant, a natural gas wholesale distributor, for, <u>inter alia</u>, breach of contract, after the defendant experienced shortages in natural gas supply causing it to curtail its deliveries to the plaintiff. <u>See</u> <u>id.</u> at 34. Although the defendant argued to the district court that the complaint raised a number of issues falling within the expertise of the FERC and, therefore, that the proceedings should be referred to that entity, the district court refused to apply the doctrine of primary jurisdiction. Accordingly, the court allowed the case to proceed to a jury, and the plaintiff was awarded significant monetary damages. <u>Id.</u> Shortly after noting its appeal to the Fourth Circuit, the defendant filed a petition with the FERC, requesting, among other things, investigation into the facts and circumstances underlying the gas shortages and the effect of an award of damages on the FERC's ability to allocate gas supply, as well as a declaratory order regarding the defendant's liability under FERC's rules and regulations for the gas shortages. As it has in this case, the FERC certified these issues for review. <u>See</u> <u>id.</u> at 35.

Recognizing the importance of "reconciling the functions of administrative agencies with the judicial function of the courts," the Fourth Circuit decided to stay its review of the district

11

court's decision pending the resolution of the pending FERC proceeding.  See id.   In so doing, the Court of Appeals pointed out that "the advisability of invoking primary jurisdiction is the greatest when the issue is already before the agency."   Id. Although conceding that the FERC ostensibly lacked jurisdiction to entertain the plaintiff's common law breach of contract claim, the Fourth Circuit concluded that Congress had vested the FERC with regulatory responsibility over the curtailment question, which was a primary component of the defendant's FERC claim.  See id. Hence, the Fourth Circuit held that deference to the primary jurisdiction of the FERC was warranted and stayed the appeal pending the outcome of those proceedings.[4]  See id.

        In opposition to NOVEC's motion to dismiss, Choptank and Delaware argue that, because this case only involves a simple common law contract dispute that in no way implicates federal regulations regarding the transmission or sale electric energy, the FERC does not have primary jurisdiction.  Further, they argue that the FERC cannot adjudicate the breach of contract claim, an issue which is solely within the province of this Court.  The plaintiffs are correct that the FERC lacks jurisdiction to entertain the common law breach of contract claim, but that does not preclude a finding of the FERC's primary jurisdiction.

---

        [4] In addition, the Court of Appeals referred several issues to the FERC for its determination and decision.

Indeed, the plaintiffs' argument that the underlying contract dispute has nothing to do with the transmission and sale of electric energy is disingenuous at best.  To the extent that the breach of contract claim stems directly from the provisions of the yet-to-be approved Reorganization Agreement, which establishes uniform procedures for the sale and distribution of wholesale power among the member cooperatives, this case is primarily about the transmission and sale of electric energy among public cooperatives, subject matters exclusively within the jurisdiction of the FERC. See 16 U.S.C. § 825 (2004).  These complex matters are presently pending before that regulatory body as part of the Reorganization Agreement approval process.  Consequently, the FERC has primary jurisdiction.

In reaching this conclusion, the Court is mindful of the need for uniformity and consistency between administrative and judicial bodies with respect to the regulation of a particular industry. See Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426 (1952).  In that regard, the FERC recently recognized NOVEC's right to intervene and to present evidence pertaining to the terms and conditions of the Reorganization Agreement.  By ordering briefing and setting the matter for evidentiary hearings, the FERC obviously deems NOVEC's disclosures important to its assessment of the propriety of the ODEC/NewDEC reorganization.  Specifically, the FERC has raised concerns regarding the effect of the Reorganization

13

Agreement on rates and has suspended its approval of the Reorganization Agreement pending the outcome of the evidentiary hearings on that issue. <u>See</u> Pl.'s Exs. E & F. Thus, if this Court were to enjoin NOVEC from pursuing the protest action, as the plaintiffs request, there would be a significant risk that the order of the Court might impede the FERC in the exercise of its lawful oversight authority of public electric cooperatives.

Further, there are advantages of deferring to an administrative agency, at least initially, where, as here, "the issue involves technical questions of fact uniquely within the expertise of an agency - such as matters turning on an assessment of industry conditions." <u>Nader v. Allegheny Airlines</u>, 426 U.S. 290, 304 (1976). To the extent that the pending breach of contract action arises directly from a Reorganization Agreement, the overall validity of which is a technical question of fact squarely within the FERC's jurisdiction, resolution of the common law claim should be deferred pending the outcome of the regulatory proceedings.

That is especially important here because the breach upon which this action is based relates to obligations imposed by the Reorganization Agreement, the very validity of which depends upon the FERC's approval. <u>See</u> Reorganization Agreement, Article 6.1 and Articles 7.1 and 7.3. Thus, the obligations, the alleged breach of which form the basis of this action, may be subject to the satisfaction of a condition subsequent (the approval of the

14

Reorganization Agreement) which may not come to pass. For that additional reason, it is best to allow the FERC to conclude the approval process before further proceeding in this action. Moreover, the relief sought by Choptank and Delaware cannot be appropriately shaped (if, indeed, relief is called for) until the FERC completes its approval process.

Finally, the Court gives credence to the Fourth Circuit's admonition that "the advisability of invoking primary jurisdiction is the greatest when the issue is already before the agency." CF Indus., Inc. v. Transcon. Gas Pipe Line Corp., 614 F.2d 33, 35 (4th Cir. 1980). The FERC recently has ordered evidentiary hearings in the protest action, and, therefore, some of the issues underlying the breach of contract action are already before the agency. Thus, consideration of this factor augers in favor of deferring this action pending resolution of the FERC proceedings. See id.

On balance, the preferable course here appears to be to retain jurisdiction over this action to adjudicate the plaintiffs' breach contract claim, if that should become necessary.[5] Given this resolution, it is not necessary, at this juncture, to entertain NOVEC's, other arguments with respect to its motion to dismiss except to say that, on this record, there is no merit to the

---

[5] Of course, the parties may prefer to agree to a dismissal without prejudice. If they elect to pursue that course, a proposal to that effect should be tendered ten days from entry of this Opinion.

15

contention that the amount in controversy does not exceed $75,000, exclusive of interest and costs or the Plaintiff's Motion For Summary Judgment (Docket No. 13).

CONCLUSION

For the foregoing reasons, the Defendant's Motion To Dismiss Plaintiff's Complaint, Or, In The Alternative, To Stay This Action Pending Resolution Of The Pending Proceedings Before The Federal Energy Regulatory Commission (Docket No. 3) is GRANTED to the extent it requests this Court to stay the proceedings pending the outcome of the FERC proceedings and DENIED to the extent it requests this Court to dismiss the plaintiff's complaint.

Plaintiff's Motion for Summary Judgment (Docket No. 2) is denied without prejudice as moot.

The facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record by facsimile and regular mail.

It is so ORDERED.


_____/s/_____
                    United States District Judge

Richmond, Virginia
Date: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHOPTANK ELECTRIC COOPERATIVE,
INC. and DELAWARE ELECTRIC
COOPERATIVE, INC.

    Plaintiffs,

v.                              Civil Action No. 3:05cv137

NORTHERN VIRGINIA ELECTRIC
COOPERATIVE, a Virginia Electric
Utility Cooperative,

    Defendant.

**ORDER**

    For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

    (1) the Defendant's Motion To Dismiss Plaintiff's Complaint, Or, In The Alternative, To Stay This Action Pending Resolution Of The Pending Proceedings Before The Federal Energy Regulatory Commission (Docket No. 3) is GRANTED in part and DENIED in part;

    (2) the Plaintiffs' Motion for Summary Judgment (Docket No. 2) is denied without prejudice as moot; and

    (3) oral argument scheduled for 10:30 a.m. June 17, 2005 is cancelled.

    The Clerk is directed to send a copy of this Order to all counsel of record by facsimile and regular mail.

    It is so ORDERED.


                         _____/s/_____
                          United States District Judge

Richmond, Virginia
Date: _____